CLERK'S OFFICE
A TRUE COPY
Jul 08, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with Yahoo account<br>rollolandscaping@yahoo.com, that is stored at premises<br>owned, maintained, controlled or operated by Yahoo Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.   24   MJ   140 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343;<br>18 U.S.C. § 1344 and<br>18 U.S.C. § 1957 | Wire Fraud, Bank Fraud and Transactions involving criminally derived property |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ashley Gentle, FBI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 07/08/2024

*Judge's signature*

City and state: Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Ashley Gentle, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Yahoo Inc. ("YAHOO"), an electronic communications service and/or remote computing service provider headquartered at 770 Broadway, 9th Floor, New York, NY 10003-9562.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require YAHOO to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent ("SA") for the Federal Bureau of Investigation ("FBI") currently assigned to the Milwaukee Field Division. I am assigned the Complex Financial Crimes squad, where I investigate violations of federal law including, but not limited to, offenses involving financial threats.

3.      I have been employed as a SA with the FBI since February 2023. I have received basic federal law enforcement training, including the training at the FBI academy, as well as other specialized federal law enforcement training. I have participated in the investigation of numerous criminal matters. I have used many investigative techniques in furtherance of such investigations. I have interviewed and operated informants, conducted searches and interviews, and have

conducted physical and electronic surveillance. In my experience as a law enforcement officer, I have assisted in investigations, which have resulted in the issuance and execution of search warrants resulting in the seizure of evidence, and the arrest of individuals to include those involved in financial fraud, and other violations of federal criminal law.

4.　　I have knowledge of the following information based on my own observations and investigation as well as information that I have learned from other law enforcement officers, to include but not limited to, verbal discussions with other law enforcement officers named in this affidavit. Because this affidavit is being submitted solely for establishing probable cause to obtain warrants, I have not included each and every fact known to me concerning this investigation. I have set forth facts necessary to support the authorization of the requested search warrant.

5.　　Based on my training, experience and the facts as set forth in this Affidavit, I submit that there is probable cause to believe that Vincent Franzen and other unknown persons (hereinafter referred to as "FRANZEN") and others have committed violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1857 (Transactions Involving Criminally Derived Property). There is probable cause to believe that evidence, fruits, and instrumentalities of these crimes will be located in FRANZEN's email account, *rollolandscaping@yahoo.com,* maintained at YAHOO.

## JURISDICTION

6.　　This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## PROBABLE CAUSE

7. The FBI is investigating FRANZEN for obtaining bank account information from elderly victims in the Eastern District of Wisconsin and elsewhere during a period that spans from approximately 2020 to 2023. As described below, there is probable cause to believe that FRANZEN's email account, *rollolandscaping@yahoo.com*, contains instrumentalities, fruits, and other evidence of wire fraud.

8. For background, FRANZEN owns Franzen Brothers Landscaping LLC and Rolling Acres Landscaping LLC. The Wisconsin Department of Financial Institutions lists FRANZEN as Franzen Brothers Landscaping LLC's and Rolling Acres Landscaping LLC's registered agent. The principal office for both businesses is listed as FRANZEN's residential address, W8851 Lakeshore Drive, Butternut, Wisconsin 54514.

9. According to Rolling Acres Landscaping LLC's Facebook page, Rolling Acres Landscaping LLC provides "…Landscaping, brick patios, retaining walls, snow plowing, dirt work, fire pits & more!" to consumers in Northern Wisconsin.

**Victim #1**

10. In 2020, an elderly male's (hereinafter referred to as "VICTIM1") family desired to renovate their family cabin located in Park Falls, Wisconsin. At the time, VICTIM1's health was declining, so VICTIM1's family assisted him with locating a landscaper. Due to the COVID-19 pandemic, VICTIM1's family encountered difficulty locating an available landscaper.

11. Soon after, a local garden center, located in Northern Wisconsin, recommended FRANZEN's business Rolling Acres Landscaping LLC. VICTIM1's family contacted FRANZEN to discuss their interest. FRANZEN advised that he was almost immediately available to perform work on VICTIM1's property. Shortly thereafter, FRANZEN arrived at VICTIM1's property and

3

inspected VICTIM1's property. FRANZEN drafted a handwritten bid on a notepad and advised that he could complete the project by Summer 2021.

12.     By November 2020, VICTIM1's family hired Rolling Acres Landscaping LLC to build and repair retaining walls on VICTIM1's property. VICTIM1's family agreed to pay $47,000, in installments, to Rolling Acres Landscaping LLC for the renovation project.

13.     In December 2020, FRANZEN began VICTIM1's renovation project. Due to VICTIM1's declining health, VICTIM1's family managed all the contractors on VICTIM1's property, including Rolling Acres Landscaping LLC. VICTIM1's family regularly met with VICTIM1 concerning the status of the renovation project. Following their family meeting, VICTIM1 would then write a check addressed to "Rolling Acres Farm & Landscaping". VICTIM1's family would then mail the check to FRANZEN at W8851 Lakeshore Drive, Butternut, Wisconsin 54514, FRANZEN's residential address.

14.     In December 2020, VICTIM1's family mailed a physical check addressed to "Rolling Acres Farm & Landscaping". The check, in the amount of $14,000, was from VICTIM1's JPMorgan Chase (hereinafter referred to as "Chase") bank account.

15.     In January 2021, VICTIM1's family mailed a physical check, in the amount of $7,000, to FRANZEN's residential address. VICTIM1 addressed the check to "Rolling Acres Farm & Landscaping". The funds sourced from VICTIM1's Chase account.

16.     In May 2021, VICTIM1's family mailed a physical check, in the amount of $7,000, to FRANZEN's residential address. VICTIM1 addressed the check to "Rolling Acres Farm & Landscaping". The funds sourced from VICTIM1's Chase account.

4

17. VICTIM1's family often communicated with FRANZEN in-person and via email regarding project status updates. FRANZEN utilized email address *rollolandscaping@yahoo.com* to communicate with VICTIM1's family.

18. In February 2023, a Chase employee noted that VICTIM1's Chase account was depleted numerous times—nearly overdrawing VICTIM1's Chase account. Additionally, there were multiple unauthorized loans and credit card payments from VICTIM1's Chase account to three accounts held by FRANZEN.

19. VICTIM1's family advised the FBI that the funds in VICTIM1's Chase account came from his retirement plan and his personal trust.

20. Chase attributed approximately $396,000 in unauthorized transactions from VICTIM1's Chase accounts to three accounts held by FRANZEN. These accounts included: Discover, American Express, and Ally Bank. Approximately $356,600 was successfully transferred from VICTIM1's Chase account to FRANZEN's three creditor accounts.

21. Chase reimbursed VICTIM1 the total amount withdrawn from his account as a result of FRANZEN's fraudulent activities. Chase received approximately $345,000 in restitution from the financial institutions holding FRANZEN's accounts. Chase continues to pursue the remaining $11,600.

22. According to Discover, FRANZEN's Discover account was opened in January 2019 utilizing email address *rollolandscaping@yahoo.com*. Over the years, Discover has sent multiple emails to *rollolandscaping@yahoo.com* notifying FRANZEN of his account status.

23. In a letter, dated March 14, 2023, sent from Discover to FRANZEN's residential address, Discover communicated with FRANZEN about unrecognized activity occurring within his Discover account. Discover advised FRANZEN that Discover opened a fraud dispute to further

5

investigate the activity within FRANZEN's account. The letter suggested that FRANZEN and Discover engaged in a conversation prior to the letter being sent to FRANZEN's residential address.

24. In April 2023, following Discover's internal review, Discover closed FRANZEN's Discover account due to unusual payment activity. Discover debited FRANZEN's account approximately $173,684. Discover initiated the internal review because of its understanding of FRANZEN's apparent fraudulent activities with VICTIM1's funds.

25. In April 2024, the FBI performed a gas and electric utilities check with Xcel Energy, an electric and natural gas service provider in Wisconsin, regarding FRANZEN's residential address. Xcel Energy advised that FRANZEN holds responsibility for the utility account. Between March 2022 and February 2023, Xcel Energy charged approximately $2,100 to FRANZEN's Discover card. Between March 2022 and February 2023, VICTIM1's Chase account paid approximately $2,100 in Xcel Energy charges for services provided to FRANZEN's residential address.

26. Additionally, SQ*Franzen Brothers charged approximately $6,200 to FRANZEN's Discover card. "SQ*" is commonly associated with a vendor utilizing a Square Card reader to process a payment. As mentioned before, FRANZEN is the registered owner of Franzen Brothers Landscaping LLC. VICTIM1's Chase account paid approximately $6,200 in SQ*Franzen Brothers charges between October 2022 and January 2023.

27. Furthermore, VICTIM1's Chase account paid approximately $3,340 towards FRANZEN's Discover card regarding multiple Victra store charges located in Park Falls, WI. Victra is an authorized Verizon retailer. FRANZEN owns multiple Verzon accounts. The email address associated with Franzen's Verizon accounts is *rollolandscaping@yahoo.com*.

6

28. Between November 2021 and February 2023, VICTIM1's Chase account paid approximately $125,567 to five (5) Ally accounts held by Franzen. This investigation established that FRANZEN's Ally accounts were loans for four (4) vehicles to include: a 2015 Ford F-250, a 2018 Cadillac Escalade ESV, and two 2022 Dodge Ram 1500. The email address associated with Franzen's Ally account is *rollolandscaping@yahoo.com*.

29. It should be noted that VICTIM1 was in his 90's at the time the unauthorized transactions occurred. VICTIM1 never met FRANZEN in-person. VICTIM1's family members stated that VICTIM1 never authorized FRANZEN to pay FRANZEN's debt with VICTIM1's bank account.

30. As a result of interviews and bank account documentation, the FBI concluded that FRANZEN obtained VICTIM1's bank account information from checks written by VICTIM1 when VICTIM1 made payments to Rolling Acres Landscaping LLC. FRANZEN was then able to enter VICTIM1's bank account information to pay various creditor accounts online.

**Victim #2**

31. While reviewing FRANZEN's financial accounts, the FBI noted transactions sourcing from an HSBC Bank account. Agents later determined, through a review of HSBC account documentation, that the bank account belonged to an elderly couple (hereinafter referred to as "VICTIM2") residing in Jersey City, New Jersey.

32. In September 2020, various creditor accounts held by FRANZEN and FRANZEN's wife, Heidi Christian (hereinafter referred to as "CHRISTIAN"), received approximately $81,900 from VICTIM2's HSBC bank accounts. The accounts held by FRANZEN and CHRISTIAN included: Discover, Comenity, Capital One, Pioneer, and John Deere Financial. The email address

7

associated with the Discover, Comenity, Capital One, and John Deere Financial accounts is *rollolandscaping@yahoo.com*.

33. Four of the payments from VICTIM2's bank account were directed to two different accounts held by initials "S.M". Those accounts included Comenity and Credit One Bank. The investigation also determined that "S.M"'s account attempted one unauthorized ACH payment from a Peoples Bank account. The ACH payment occurred within a week of the unauthorized transactions within VICTIM2's HSBC account. The investigation has not yet established a definitive connection between FRANZEN and "S.M."; however, "S.M." appears to live near the same small town where FRANZEN resides.

34. HSBC reimbursed VICTIM2 the total amount withdrawn from VICTIM2's accounts as a result of the unauthorized transactions.

35. In an interview with VICTIM2, VICTIM2 did not know how the funds were transferred out of the HSBC accounts. VICTIM2 had no recollection of FRANZEN.

36. It should be noted that VICTIM2 was 83 years old and 87 years old at the time the unauthorized transactions occurred. The account holder of the Peoples Bank account accessed by S.M. was 63 years old at the time of unauthorized transaction.

**Additional Victims**

37. In 2021, Regional Finance Corporation of Wisconsin mailed a loan offer to CHRISTIAN's residential address— which is the same as FRANZEN's residential address. The loan offer appeared to be a live check. I am aware that lenders will send live checks to people who are preapproved for loan based on certain criteria set forth by the lender. The loan offer contained Regional Finance Corporation of Wisconsin's routing number and account number.

8

CHRISTIAN did not cash the loan offer check. CHRISTIAN nor FRANZEN received a loan from Regional Finance Corporation of Wisconsin.

38. Between March 2021 and April 2021, approximately $215,690 in unauthorized ACH payments were made to various creditor accounts held by FRANZEN and CHRISTIAN, utilizing the same Regional Finance Corporation of Wisconsin routing number and account number which was listed on the loan check received by CHRISTIAN.

39. The investigation also determined that FRANZEN attempted to have an ACH payment applied to one of his loan accounts at John Deere Financial, on or about 10/22/2021, in the amount of $14,900.00. The source of funds for the payment was a cashier's check account held by Cypress Bank. Cypress Bank officials reversed the payment when they realized an electronic payment was attempted within an account solely reserved for paper cashier's checks. The email address associated with the John Deere Financial account is *rollolandscaping@yahoo.com*.

40. Additional investigation determined that FRANZEN appeared to have utilized a non-existent account number at Partners 1st Federal Credit Union to make multiple payments to his loan accounts at John Deere Financial, totaling $65,046.44. During the same period, a $4,000.00 cashier's check was generated as a result of an unauthorized transaction using the same (fake) account number. The cashier's check was made payable to an individual with the initials "J.J." Although "J.J." appears to live near the same small town where FRANZEN resides, the investigation has not yet established a definitive connection between FRANZEN and "J.J."

**BACKGROUND CONCERNING EMAIL**

41. In my training and experience, I have learned that YAHOO provides a variety of on-line services, including electronic mail ("email") access, to the public. YAHOO allows

9

subscribers to obtain email accounts at the domain name **yahoo.com**, like the email account listed in Attachment A. Subscribers obtain an account by registering with YAHOO. During the registration process, YAHOO asks subscribers to provide basic personal information. Therefore, the computers of YAHOO are likely to contain stored electronic communications (including retrieved and unretrieved email for YAHOO subscribers) and information concerning subscribers and their use of YAHOO services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

42. A YAHOO subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by YAHOO. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

43. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

10

44.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

45.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

46.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the

11

information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

47. I am aware that creditors and consumers often correspond via email, discussing payments, payment disputes, results of dispute investigations, and other matters which may be pertinent to this investigation. Given the creditors and other companies that FRANZEN has

12

given his email address to use as a contact, I believe it is reasonable to believe that such emails will be found in YAHOO email account *rollolandscaping@yahoo.com*.

48.	In general, an email that is sent to a YAHOO subscriber is stored in the subscriber's "mail box" on YAHOO servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on YAHOO servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on YAHOO's servers for a certain period of time.

49.	On March 28, 2024, the FBI served a preservation request to YAHOO requesting YAHOO to preserve all data, records, and communications for the time period January 1, 2020, to March 28, 2024, related to *rollolandscaping@yahoo.com*. On March 29, 2024, YAHOO confirmed receipt of the preservation request.

## Conclusion

50.	Based on the forgoing, I request that the Court issue the proposed search warrant.

51.	Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on YAHOO.  Because the warrant will be served on YAHOO, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## Attachment A

Property to be Searched

This warrant applies to information associated with the following Yahoo Inc. (Yahoo) account, *rollolandscaping@yahoo.com* ("the Account"), that is stored at premises owned, maintained, controlled, or operated by Yahoo Inc., a company headquartered at 701 First Avenue, Sunnyvale, California, 94089 ("Target Provider").

**Attachment B**

**Particular Things to be Seized**

## I.  Information to be disclosed by Yahoo Inc. (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on March 28, 2024, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

  a.  The contents of all emails associated with the account from January 2021 to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

  b.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

  c.  The types of service utilized;

  d.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken. The Provider is hereby ordered to disclose the above information to the government within ten days of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1957 (transactions involving criminally derived property), those violations involving FRANZEN and occurring after January 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence of communications with customers or potential customers of Rolling Acres Landscaping LLC and Franzen Brothers Landscaping Supply LLC.

(b) Evidence of communications with victims or potential victims;

(c) Evidence of communications with financial institutions regarding payments made using misappropriated funds, confirmations of payments, receipts of payments and purchases made using stolen funds;

(d) Evidence of communications with any coconspirators, including individuals who live in the same area as FRANZEN and who have withdrawn funds from the same victim bank accounts;

(e) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(f) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐

**CLERK'S OFFICE**
**A TRUE COPY**
**Jul 08, 2024**
**s/ D. Olszewski**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 24 MJ 140 |
| Information associated with Yahoo account rollolandscaping@yahoo.com, that is stored at premises owned, maintained, controlled or operated by Yahoo Inc. | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____07/22/2024_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____William E. Duffin_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____07/08/2024 at 9:50 a.m._____

*Judge's signature*

City and state: Milwaukee, WI

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## Attachment A

Property to be Searched

This warrant applies to information associated with the following Yahoo Inc. (Yahoo) account, *rollolandscaping@yahoo.com* ("the Account"), that is stored at premises owned, maintained, controlled, or operated by Yahoo Inc., a company headquartered at 701 First Avenue, Sunnyvale, California, 94089 ("Target Provider").

<u>**Attachment B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Yahoo Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on March 28, 2024, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account from January 2021 to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken. The Provider is hereby ordered to disclose the above information to the government within ten days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1957 (transactions involving criminally derived property), those violations involving FRANZEN and occurring after January 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence of communications with customers or potential customers of Rolling Acres Landscaping LLC and Franzen Brothers Landscaping Supply LLC.

(b) Evidence of communications with victims or potential victims;

(c) Evidence of communications with financial institutions regarding payments made using misappropriated funds, confirmations of payments, receipts of payments and purchases made using stolen funds;

(d) Evidence of communications with any coconspirators, including individuals who live in the same area as FRANZEN and who have withdrawn funds from the same victim bank accounts;

(e) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(f) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.